Karges Furniture Co. *v.* Amalgamated, etc., Union—165 Ind. 421.

time, to recover from the estate, it was good against a demurrer. As was said in *Pence* v. *Young, supra:* "All the averments relating to concealment and discovery might have been omitted, and still the complaint would have been sufficient, and their presence in the complaint did not render it insufficient." It therefore becomes a work of supererogation to consider whether the averments of the complaint are sufficient, with respect to the active fraud of the decedent, the reasonable belief and reliance thereon by the plaintiff, and want of opportunity for discovery of the fraud, to warrant a suspension of the statute of limitation.

Judgment reversed, and cause remanded, with instructions to overrule the demurrer to the complaint.

---

KARGES FURNITURE COMPANY *v.* AMALGAMATED WOODWORKERS LOCAL UNION NO. 131 ET AL.

[No. 20,533. Filed October 31, 1905.]

1. PARTIES.—*Unincorporated Labor Unions.*—In the absence of a statute the common-law rule prevails that an unincorporated labor union can not sue or be sued, legal redress being given only in an action by or against the individual members thereof. p. 423.

2. CONSPIRACY.—*Civil.—Definition.*—A civil conspiracy consists in a combination of two or more persons to do an unlawful act by lawful or unlawful means, or to do a lawful act by unlawful means. p. 424.

3. SAME.—*Malicious Interference.—Competition.*—Malicious interference with another's business, unless justified by competition, is an actionable wrong. p. 427.

4. SAME.—*Strikes.—Labor Unions.*—A labor union has the legal right to order a concerted strike for the interests of its members provided lawful means only are used. p. 428.

5. SAME.—*Contracts.—Breach.*—A concerted strike by the members of a labor union is wrongful if it contemplates the breach of existing contract rights between their employer and themselves. p. 428.

6. SAME.—*Strikes.—Injunction.*—An injunction is properly refused against the members of a labor union who used lawful means only during a strike, but is properly issued against such members as used violence, threats, intimidation and other unlawful means. p. 429.

422    SUPREME COURT OF INDIANA,

Karges Furniture Co. *v.* Amalgamated, etc., Union—165 Ind. 421.

7. CONSPIRACY. — *Labor Unions.* — *Injunction.* — Injunction can not be granted against a labor union which orders a strike of its members, where such union, in good faith, instructs its members to use no force, threats, intimidation or other unlawful means in the conduct of such strike, only the members who participate in unlawful practices being amenable to injunction. p. 430.

8. SAME.—*Strikes.*—*Pickets.*—Picketing, where no force, threats, intimidation or other unlawful means is employed, is lawful. p. 430.

9. SAME.—*Strikes.*—*Persuasion.*—Argument and peaceable persuasion are lawful means to prevent laborers from working for an employer against whom the labor union has ordered a strike, and for the use of such no liability exists.    p. 431.

10. APPEAL AND ERROR.—*Weighing Evidence.*—*Statutes.*—The Supreme Court will not weigh conflicting oral evidence in a case not triable by jury, under the act of 1903 (Acts 1903, p. 338, §8).    p. 433.

From Superior Court of Vanderburgh County; *John H. Foster,* Judge.

Suit by the Karges Furniture Company against the Amalgamated Woodworkers Local Union Number 131 and others. From a decree for plaintiff against certain defendants, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*J. E. Williamson* and *G. A. Cunningham,* for appellant. *Funkhouser, Hostetter & Funkhouser,* for appellees.

HADLEY, J.—Appellant brought this suit against the appellees, the Amalgamated Woodworkers Union No. 131 of Evansville, an unincorporated labor organization, and its members, to enjoin them, such members being on a strike, from picketing, intimidating, and otherwise interfering with the plaintiff's employes and business. The complaint, in two paragraphs, was answered by a general denial. There was a trial, special findings, and injunction awarded against fourteen of the appellees, and finding and decree in favor of the remaining appellees, including said amalgamated woodworkers union.

The real question presented by the record is the refusal of the court to enjoin the defendant union and all its members from picketing and otherwise intermeddling with appellant's business.

The first question to be considered is: Can an action be maintained against an unincorporated society or association?

"Private corporations," says Field, J., in *Pembina, etc., Mining Co.* v. *Pennsylvania* (1888), 125 U. S. 181, 189, 8 Sup. Ct. 737, 31 L. Ed. 650, "are merely associations of individuals united for a special purpose, and permitted to do business under a particular name, and have a succession of members without dissolution." In England corporations exist only by virtue of letters patent issued by permission of the crown, and in this State corporations can be created only by special permission of the State, expressed in legislative enactment. Corporations may in their corporate name sue and be sued, and hold title to property. The interests of their several members are represented by shares, which may be sold and transferred to a stranger without affecting a dissolution or the status of the corporate body. A fundamental purpose for the creation of corporations is to subserve public welfare and convenience by bestowing the character of individuality upon a combination of capital and individuals, for the accomplishment of such things as may not be so well or readily achieved by a single person, and that may not be ended by death, or the withdrawal of a part of their members; and such body being created by authority of a statute, and endowed with certain rights and obligations, is recognized by the law as an artificial person, possessed of the right to sue and be sued.

On the other hand, in the absence of an enabling statute defining the rights and liabilities of the members, societies, associations, partnerships, and other bodies, combined under their own rule, for their own private benefit, and without any express sanction of law, are not, in the collective capacity and name, recognized at common law as having any

legal existence distinct from their members; hence no power
to sue or be sued in the company name.   Such unincor-
porated associations, so far as their rights and liabilities are
concerned, are rated as partnerships, and to enforce a right
either for or against them, as in partnerships, the names of
all the individual members must be set forth either as
plaintiffs or defendants.   *Hays* v. *Lanier* (1833), 3 Blackf.
*322; *Hughes* v. *Walker, Carter & Co.* (1835), 4 Blackf.
50; *Holland* v. *Butler* (1839), 5 Blackf. 255; *Livingston* v.
*Harvey* (1858), 10 Ind. 218; *Adams Express Co.* v. *Hill*
(1873), 43 Ind. 157; *Pollock* v. *Dunning* (1876), 54 Ind.
115; 22 Ency. Pl. and Pr., 230, 242, and cases collated.
We have no statute abrogating the rule at common law;
hence it must be held that this rule is still in force in this
State, and, regardless of the evidence, the court committed
no error in denying an injunction against the appellee the
Amalgamated Woodworkers Local Union No. 131.

Do the findings show a conspiracy to injure the plaintiff?
A conspiracy is defined to be "a combination of two or more
persons, by some concerted action, to accomplish
some criminal or unlawful purpose; or to accom-
plish some purpose, not in itself criminal or unlaw-
ful, by criminal or unlawful means."   *Commonwealth* v.
*Hunt* (1842), 4 Metc. 111, 123, 38 Am. Dec. 346; *Spies* v.
*People* (1887), 122 Ill. 1, 213, 12 N. E. 865, 17 N. E. 898,
3 Am. St. 320; 3 Greenleaf, Evidence (16th ed.), §89.

It is disclosed by the special findings that the woodworkers
union of Evansville had about six hundred members, all
employed in the ten furniture factories in said city, and of
the appellees nine were nonmembers and the others were
members of the union.   On March 17, 1903, at a meeting
of the union, it was resolved by a free vote of the members
—330 to 17—that all members should, on April 1, 1903, as
a body, discontinue their work at their several places of em-
ployment, unless meanwhile the employers, including the

plaintiff, should agree to an advance in wages, to a shorter work-day, and to furnish a scale of prices to be paid piece workers. All of the appellees, except the nonmembers, either voted for the resolution or subsequently ratified it. By order of the union, notice of the demands, signed by the president and secretary, was, on March 21, delivered to the plaintiff. On April 1, the demands upon the employers not having been granted, all the plaintiff's employes, except about twenty, nonmembers of the union, each one acting voluntarily in concert with others and in pursuance of the agreement and vote, quit their employment and left the plaintiff's factory.

Soon after the strike was inaugurated, the union, with the participation or subsequent ratification of the other appellees, organized a picket system, whereby pickets were regularly and daily maintained in the vicinity of all the factories affected by the strike. Each morning a meeting of the union was held to distribute food supplies, to appoint picket committees, composed of from two to eight men, to receive reports therefrom, and to consider such means as might be necessary to compel the plaintiff to grant its demands. The pickets thus chosen, to avoid recognition by employers, were assigned so that no one would picket the factory where he had been employed. The pickets were uniformly instructed by the president and other officers of the union before going on duty to take note of those entering and leaving the factory, to ascertain their names and places of residence, and, as far as they could, by fair and peaceful means, to influence those remaining at work to quit, and prevent new men from entering to take the places of those on strike. It was often declared by the president, and always unanimously indorsed by the members present, that the policy of the union was: (1) That the members of the union should endeavor by peaceable persuasion, and not otherwise, to induce such woodworkers as were not members of said union and who

426    SUPREME COURT OF INDIANA,

Karges Furniture Co. *v.* Amalgamated, etc., Union—165 Ind. 421.

remained in the employ of the plaintiff and other employers to join the union and coöperate in the strike. (2) That they should seek the acquaintance of such working nonunion men, visit them at their homes, and there, and at all other suitable places, discuss with them the mutual benefits of the union, and the importance of their quitting work, and by fair argument and peaceable measures try to induce them to cease working and attach themselves to the union. (3) That under no circumstances should any striker endeavor, by any form of violence, threats or intimidation, to influence the acts and conduct of any one engaged, or about to engage, in work in said factories, including the plaintiff's. The peaceable policy adopted by the union, and given as instructions to the pickets, was adopted and given in good faith, and the defendants individually and collectively as members of the union, at all times intended to effectuate the purposes of the strike by lawful means, and not by violence, threats or intimidation.

The plaintiff's factory is so situate that many miners, moulders and other workmen reside in the neighborhood, and pass and repass the plaintiff's factory in going to and from their work, and occasionally groups or crowds of men, generally composed in small part of strikers, would assemble in the alley and streets about the plaintiff's factory, and sometimes accost the plaintiff's workmen as they entered or left the factory, by calling them "scabs" and other opprobrious names. On the 7th and 8th of April, and on subsequent days, certain of plaintiff's employes, on their way home from work, were stopped and followed by groups of men, including in some one or more of the groups the defendants John Gebhardt, Harry Thomas, John Kramer, John Mandel, John Siemers, Robert Fisher, Charles Lipking, Frank Barnes, Henry Pittineier, Frank Gebhardt, John Stock, Fred Wilhelm and Leander Cook, who in one instance assaulted said employes, and in all instances called

said employes offensive names, and cursed and threatened them with violence if they did not quit work in plaintiff's factory. On many other occasions others of the defendants stopped and visited the plaintiff's employes, and argued with them the propriety of quitting work; but such argument and conversations were held in a fair and friendly spirit, and devoid of any form of intimidation or offense. The withdrawal of the plaintiff's workmen and its inability to secure others to take their places so seriously impaired the productive capacity of the factory that the plaintiff was unable to fill the orders it had accepted, and it was thereby damaged, and had reasonable grounds to expect further and continuing damages. The employes who remained at work in plaintiff's factory, except a few who afterwards quit on account of the strike and its consequences, are still employed therein. At the time of the strike part of the plaintiff's workmen were employed without any contract as to duration of service, and the others were employed by the piece. It was not shown in evidence that the violence and intimidation mentioned above was ever reported to the union, or that the union had knowledge of any such proceedings.

The court stated as conclusions of law: (1) That the plaintiff is entitled to an injunction as prayed against the defendants last above named; and (2) plaintiff is not entitled to an injunction against the defendant Amalgamated Woodworkers Local Union No. 131, nor against any of the defendants whose names are not set out in the findings.

All combinations are not conspiracies. It is fundamental under our form of government that all citizens in the race of life have a free and equal chance; that one may

3. pursue the path he chooses and do whatever he deems best for himself, so long as he does not infringe upon the rights of another exercising a like and equal freedom. Every absolute right has its limits, and to the extent of those limits it is the correlative duty of every other person to re-

spect and refrain from obstructing by force, fraud, intimidation, or any other artificial means. It is the invasion of another's rights that constitutes a legal wrong and gives a basis for damages. A tradesman, singly or in combination with others, may lawfully advertise his goods, undersell, solicit, and win the customers of his rival, knowing that he is thereby ruining the latter's business. This is competition, and is what the law commends as "the life of trade." In such case one loses his property by the acts of his neighbor, but it is *damnum absque injuria*. But the contest must be a fair and honest one. If the·same tradesman, singly or with others, advertises his goods, undersells, solicits, and wins away the customers of his rival by false representation, intimidation or artifice—not to better himself, but to injure his rival—he has committed an actionable wrong. 1 Eddy, Combinations, §262, and note; *Jackson* v. *Stanfield* (1894), 137 Ind. 592, 23 L. R. A. 588.

Another principle: Whatever one man may do, all men may do, and what all may do singly they may do in concert, if the sole purpose of the combination is to advance the proper interests of the members, and it is conducted in a lawful manner. *Curran* v. *Galen* (1897), 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. 496; *Macauley Bros.* v. *Tierney* (1895), 19 R. I. 255, 33 Atl. 1, 37 L. R. A. 455, 61 Am. St. 770; 1 Eddy, Combinations, §523; *Clemmitt* v. *Watson* (1895), 14 Ind. App. 38.

It is illegal under all circumstances for either the employed or employer to violate a contract, and, in the absence of existing contracts, employes have the same right to strike, or cease working in a body, that the employer has to dismiss them in a body. It may, therefore, be said that employes, under no contractual restraint, may lawfully combine, and by prearrangement quit their employment in a body, for the purpose of securing from their employers an advance in wages, shorter hours, or any other

Karges Furniture Co. v. Amalgamated, etc., Union—165 Ind. 421.

legitimate benefit, even though they know at the time that such action will be attended with injury and damage to the business of their employer, provided the strike is carried on in a lawful manner—that is in a manner free from force, intimidation and false representation.   1 Eddy, Combinations, §§521-523 ; *Gray* v. *Building Trades Council* (1903), 91 Minn. 171, 179, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. 477; *Wabash R. Co.* v. *Hannahan* (1903), 121 Fed. 563, 568; *State* v. *Stockford* (1904), 77 Conn. 227, 58 Atl. 769 ; *National Protective Assn.* v. *Cumming* (1902), 170 N. Y. 315, 63 N. E. 369, 59 L. R. A. 135, 88 Am. St. 648; *Longshore Printing Co.* v. *Howell* (1894), 26 Ore. 527, 38 Pac. 547, 28 L. R. A. 464, 46 Am. St. 640; *Arthur* v. *Oakes* (1894), 63 Fed. 310, 11 C. C. A. 209, 25 L. R. A. 414; *Ames* v. *Union Pac. R. Co.* (1894), 62 Fed. 7 ; *Thomas* v. *Cincinnati, etc., R. Co.* (1894), 62 Fed. 803 ; *Erdman* v. *Mitchell* (1903), 207 Pa. St. 79, 56 Atl. 327, 63 L. R. A. 534, 99 Am. St. 783 ; 3 Current Law, p. 726 ; Ray, Contractual Lim., 338, 378; Greenhood, Public Policy, 650 ; Wood, Master and Servant (2d ed.), §241; Beach, Monopolies and Industrial Trusts, §102.

The finding of the court is that fourteen members of the union, whose names are set out, were guilty of various acts of intimidation and violence, not while serving as pickets, but while lounging in the street, and as against these the application for injunction was sustained, but as against the other defendants and members of the union the court finds that they, as individuals, and collectively as members of the union, at all times intended to effectuate the objects of the strike by peaceful means, and without violence, threats, intimidation or other unlawful methods, and so far as the findings show they continued to carry out their peaceful policy.   These facts, under the authorities above cited, characterize the combination and concert of the defendants in striking as lawful and not amenable to injunction.

430    SUPREME COURT OF INDIANA,

Karges Furniture Co. v. Amalgamated, etc., Union—165 Ind. 421.

That fourteen of the six hundred members of the union did disregard the express instructions and declared policy of the union to conduct the strike peacefully, and of their own initiative indulged in acts of disorder calculated to, and did in fact, intimidate the plaintiff's employes, is not of itself sufficient to condemn the union as a body. The strike being properly conceived and conducted by the great majority of members, its purpose will not be defeated by the unlawful conduct of a few rowdies and lawbreakers that may be found among them. "Where a combination or association is innocent in its inception," says a recent author, "but is afterwards perverted to unlawful ends, only those participating in the perversion are held to be conspirators." 1 Eddy, Combinations, §368; *Carew* v. *Rutherford* (1870), 106 Mass. 1, 10; *Commonwealth* v. *Hunt* (1842), 4 Metc. 111, 38 Am. Dec. 346, 355; *Union Pac. R. Co.* v. *Ruef* (1902), 120 Fed. 102.

But it is argued that the maintenance of pickets at the plaintiff's factory was an unlawful interference with its business, and that the appointment of, instruction to, and the receiving of daily reports from such pickets constituted all participating members of the union civil conspirators. Whether picketing is lawful or unlawful, depends in each particular case upon the conduct of the pickets themselves. The fact that they are serving under appointment and instructions from their union adds nothing to their rights and privileges as affecting third persons. Under no circumstances have pickets the right to employ force, menaces, or intimidation of any kind in their efforts to induce nonstriking workmen to quit, or to prevent those about to take the strikers' places to refrain from doing so; neither have they the right, as pickets or otherwise, to assemble about the working place in such numbers or in such manner as to impress workmen employed, or contemplating employment, with fear and intimidation. *Beaton* v. *Tarrant* (1902), 102 Ill. App. 124; *Vegelahn* v. *Guntner*

(1896), 167 Mass. 92, 44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. 443; *Murdock, Kerr & Co.* v. *Walker* (1893), 152 Pa. St. 595, 25 Atl. 492, 34 Am. St. 678.

It is, however, generally conceded in this country and in England that workmen, when free from contract obligations, may not only singly and in combination cease to work for any employer, but may also, as a means of accomplishing a legitimate purpose, use all lawful and peaceful means to induce others to quit or refuse employment. The law, having granted workmen the right to strike to secure better conditions from their employers, grants them also the use of those means and agencies, not inconsistent with the rights of others, that are necessary to make the strike effective. This embraces the right to support their contest by argument, persuasion, and such favors and accommodations as they have within their control. The law will not deprive endeavor and energy of their just reward, when exercised for a legitimate purpose and in a legitimate manner. So, in a contest between employes and employers on the one hand to secure higher wages, and on the other to resist it, arguments and persuasion to win support and coöperation from others are proper to either side, provided they are of a character to leave the persons solicited feeling at liberty to comply or not, as they please. Likewise a union may appoint pickets or a committee to visit the vicinity of factories for the purpose of taking note of the persons employed, and to secure, if it can be done by lawful means, their names and places of residence for the purpose of peaceful visitation. 1 Eddy, Combinations, §537; *Perkins, Campbell & Co.* v. *Rogg* (1892), 28 Wkly. Law Bul. 32. The decided cases are not in harmony with respect to the right to persuade, but the clear weight of authority is to the effect that so long as a moving party does not exceed his absolute legal rights, and so does not invade the absolute rights of another, he may do as he pleases, and may persuade others to do like him.

To illustrate: A resides in a populous, residential part of the city. B has established a saloon in the same square. Keeping a saloon there is lawful business. Many of the neighbors patronize the saloon, and the business prospers. A disapproves of the business in that place, and withholds his patronage. He has the absolute right to withhold it. The other neighbors have the absolute right to bestow theirs. B has no absolute right to the patronage of either, and without patronage will fail in business. Here it is plain that A has the absolute right to stand on the street corner and note all his neighbors who enter and leave the saloon, hail them on the street, or visit them at their respective homes, and by argument and persuasion (they being willing to listen) endeavor to induce them to cease their patronage. A's object is to make B's business unprofitable and losing, and thus compel him to move away, and improve the peace and attractiveness of A's neighborhood. Now if A converts all of his neighbors to his course of conduct by argument, reason, entreaty and other fair and proper means, and thereby effects the suppression of the saloon and financial ruin of B, it is *damnum absque injuria*. A has done nothing but what the law protects him in doing. 1 Eddy, Combinations, §§537, 539; Beach, Monopolies and Industrial Trusts, §107; *Union Pac. R. Co.* v. *Ruef, supra; Foster* v. *Retail Clerks, etc., Assn.* (1902), 39 Misc. (N. Y.) 48, 78 N. Y. Supp. 860; *Rogers* v. *Evarts* (1891), 17 N. Y. Supp. 264; *Perkins, Campbell & Co.* v. *Rogg, supra; Reg.* v. *Druitt* (1867), 10 Cox C. C. 592; *Reg.* v. *Hibbert* (1875), 13 Cox C. C. 82.

According to the findings, the pickets, after being chosen, and before going out, were "invariably" instructed by the presiding officer of the union to observe only peaceable means, and under no circumstances resort to force, menaces, threats or intimidation of any kind. There is no finding of any departure from these instructions by any picket, and we must, therefore, presume as against the plaintiff that

there was none, and consequently hold that, under the facts proved, the maintaining of the pickets at the plaintiff's factory was not unlawful.

The court did not err in its second and fourth conclusions of law.

As a reason for a new trial, and as an independent assignment, appellant challenges the sufficiency of the evidence to sustain the findings. He concedes in his brief that the facts found in all material respects have support from the evidence, but he requests the court, under section eight of the act of 1903 (Acts 1903, p. 338, §641h Burns 1905) to consider and weigh the evidence. There are many witnesses and about six hundred printed pages of oral testimony, and, there being a conflict in the evidence, we can not undertake to weigh it for reasons stated at length in the following recent cases in this court: *Parkison* v. *Thompson* (1905), 164 Ind. 609; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694; *Ray* v. *Baker* (1905), *ante,* 74.

Judgment affirmed.