TRI-CITY CENTRAL TRADES COUNCIL et al. v. AMERICAN STEEL FOUNDRIES.

(Circuit Court of Appeals, Seventh Circuit. December 6, 1916. Rehearing Denied January 24, 1917.)

No. 2157.

1. COURTS ☜328(3)—JURISDICTION—AMOUNT IN CONTROVERSY—INJUNCTION AGAINST STRIKERS.

Where the property which strikers were threatening to destroy far exceeded $3,000 in value, and there was the requisite diversity of citizenship, the federal court had jurisdiction, though less than $3,000 worth of property had been already destroyed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. ☜328(3).]

2. INJUNCTION ☜101(2)—STRIKERS—PICKETING.

Striking employés have a lawful right to place pickets in the streets leading to their employer's plant, to ascertain who are continuing or seeking employment there, and to persuade, but not to coerce, them not to do so, and the maintenance of such pickets, and attempts to persuade employés to cease working, cannot be enjoined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 175; Dec. Dig. ☜101(2).]

3. INJUNCTION ☜101(4)—STRIKES—LAWFUL ACT.

The exercise by employés of their right to combine and strike to obtain better wages, though it interferes with the employer's business, is not an unlawful conspiracy, which entitles the employer to an injunction restraining acts in furtherance thereof which are in themselves lawful.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. ☜101(4).]

4. INJUNCTION ☜101(4)—STRIKES—LAWFUL ACT.

The commission of unlawful acts to effectuate that purpose does not taint the purpose itself with unlawfulness, so as to justify an injunction against lawful as well as unlawful acts in furtherance thereof.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. ☜101(4).]

5. INJUNCTION ☜101(2)—STRIKES—INTERMEDDLER—UNION.

A labor union, of which former employés engaged in a strike were members, is not a mere intermeddler, whose interference with other employés may be restrained, when only lawful means are used, since a strike does not fully terminate the relationship between the parties, but creates a relationship, neither that of general employer and employé, nor that of employers and employés seeking work from them as strangers.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 175; Dec. Dig. ☜101(2).]

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit by American Steel Foundries against the Tri-City General Trades Council and others. From a decree for plaintiff, defendants appeal. Reversed, with directions to modify the decree.

Appellants, herein called defendants, appeal from the final decree entered in favor of appellee, herein called plaintiff, enjoining defendants as follows: "It is further ordered, adjudged, and decreed by the court that the said de-

fendants, the Tri-City Central Trades Council, its officers and agents, and Harry McKenny, Ted Ishmann, Earl Galloway, William Thornberg, C. Thornberg, Tom Churchill, Clay Holmes, Eddie Roach, John Aldridge, Isaac Cook, Benj. F. Lamb, J. P. McDonough, and C. E. Gerlich, and each of them, and all persons combining with, acting in concert with, or under their direction, control or advice, or under the direction, control, or advice of any of them, and all persons whomsoever, be and are hereby perpetually restrained and enjoined from in any way or manner whatsoever, by use of persuasion, threats, or personal injury, intimidation, suggestion of danger, or threats of violence of any kind, from interfering with, hindering, obstructing, or stopping any person engaged in the employ of the American Steel Foundries in connection with its business or its foundry in the city of Granite City, county of Madison, state of Illinois, or elsewhere, and from interfering by persuasion, violence, or threats of violence in any manner with any person desiring to be employed by said American Steel Foundries in its said foundry or plant, and from inducing or attempting to compel or induce by persuasion, threats, intimidation, force, or violence, or putting in fear or suggestion of danger, any of the employés of the American Steel Foundries, or persons seeking employment with it, so as to cause them to refuse to perform any of their duties as employés of the American Steel Foundries, and from preventing any person by persuasion, threats, intimidation, force, or violence, or suggestion of danger or violence, from entering into the employ of the said American Steel Foundries, and from protecting, aiding, or assisting any person or persons in committing any of said acts: and from assembling, loitering, or congregating about or in proximity of the said plant or factory of the American Steel Foundries, for the purpose of doing, or aiding or encouraging others in doing, any of the said unlawful or forbidden acts or things, and from picketing or maintaining at or near the premises of the complainant, or on the streets, leading to the premises of said complainant, any picket or pickets, and from doing any acts or things whatever in furtherance of any conspiracy or combination among them, or any of them, to obstruct or interfere with said American Steel Foundries, its officers, agents, or employés, in the free and unrestrained control and operation of its plant, foundry, and property, and the operation of its business, and also from ordering, directing, aiding, assisting, or in any manner abetting any person committing any or either of the acts aforesaid, and also from entering upon the grounds, foundry, or premises of the American Steel Foundries, without first obtaining its consent, and from injuring or destroying any of the property of the American Steel Foundries."

Plaintiff instituted this suit to prevent alleged threatened injury to its business and threatened destruction of its manufacturing plant, located at Granite City, Ill., claimed to be worth $1,000,000, which it alleges the Tri-City Trades Council, a labor organization, and other defendants, former employés of plaintiff or members of the Council, were injuring and threatening to destroy. It alleges the Tri-City Trades Council attempted to force plaintiff to raise the wage paid its employés, and to accomplish its object called a strike of plaintiff's employés. In the course of the strike picketing was resorted to, and the defendants sought the support of nonstriking and prospective employés. Plaintiff further claimed that its employés were assaulted by defendants and by those engaged in picketing the shops, and that prospective employés had been so intimidated by defendants that they refused to enter plaintiff's employment. The gravamen of the plaintiff's bill is found in the following therefrom: "Your orator further represents that the said defendants have combined and conspired to prevent your orator from employing skilled laborers at its plant, although such skilled laborers and your orator have agreed upon terms of employment that are mutually agreeable and satisfactory; that in carrying out such combination and conspiracy the defendants began picketing said plant of your orator on or about April 23, 1914; that the said defendants, on April 23d and since that time, have caused various numbers of men or pickets, to wit, 5 to 30 men, to be stationed adjacent to the main gate of your orator's said plant, which said pickets from that day until the present time have threatened to assault, mistreat, and injure various of the employés of your orator unless said employés ceased from their work;

that said defendants so combining did on April 29, 1914, cause two of your orator's employés to be assaulted by said pickets," etc.

Defendants denied any and all acts of violence or assaults of any nature. On the other hand, they claimed that strike-breakers attempted to shoot the striking employés, and were urged so to do by representatives of plaintiff. Defendants also denied the existence of any unlawful conspiracy among them, but did admit "that said Tri-City Central Trades Council did place certain ones on certain streets and avenues leading to said plant charged with doing picket duty, but such ones were stationed 100 yards from such mill, and they were instructed to notify all persons who sought to enter the plant that there was a strike on, because of such reduction in wages, and such pickets were instructed to use all honorable means to persuade such ones to not enter such plant, and not to take the places of the laboring men, who had gone on a strike on account of such reduction of wages."

The District Judge, in rendering his opinion, said: "This evidence clearly shows that this union, this trades council, by the testimony of its officers, entered upon the work of preventing this complainant from getting men to run its factory, run its plant, except upon the condition that it pay a certain scale, the November scale. That combination was illegal." Speaking of picketing he said: "However, speaking upon this question, I should say a word about picketing. There is no such thing as peaceful picketing. You might as well talk about peaceful violence. You may as well think of peaceful war as peaceful picketing. Considerable experience in this position, and having these cases frequently before me, has taught me that there is no such thing as peaceful picketing."

Defendants attack the decree on three grounds: (a) The evidence does not justify the issuance of any injunction. (b) The restraining order is too broad, and restrains defendants from doing lawful acts. (c) The court is without jurisdiction, because the amount involved does not exceed $3,000.

F. C. Smith, of Chicago, Ill., for appellants.

William E. Wheeler, of East St. Louis, Ill., and Max Pam, of Chicago, Ill., for appellee.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1] Defendants' claim that the court was without jurisdiction is without merit. The necessary diversity of citizenship appears. The amount involved exceeds $3,000. It was not necessary that $3,000 worth of property should be destroyed before the federal court acquired jurisdiction. The alleged threatened damage far exceeded the statutory sum necessary to give the district court jurisdiction.

Defendants contend that the evidence did not justify the court in granting any injunction. We are not able to say that the record presents a situation that did not warrant some action by the court. It is apparent that a situation had developed where fights had occurred and threats had been made, which if carried out would have resulted in the destruction of property. The District Judge heard and saw the witnesses, and we accept his conclusion that such evidence justified the issuance of an injunction to restrain the defendants from the commission of certain unlawful acts.

[2] But the court also enjoined the defendants "from picketing or maintaining any picket or pickets on or about the streets leading to the premises of the plaintiff." And the order continued:

"It is further ordered * * * that the said defendants * * * be and are perpetually restrained and enjoined * * * from doing any acts or things whatever in furtherance of any conspiracy or combination among them, or any of them, to obstruct or interfere with said American Steel Foundries, its officers, agents, or employés, in the free and unrestrained control and operation of its plant, foundry, and property and the operation of its business, and also from ordering, directing, aiding, assisting, or in any manner abetting any person committing any or either of the acts aforesaid."

The obvious effect and purpose of this decree was, among other things, to prevent all picketing by the defendants or others similarly interested, and to prevent these parties from persuading their fellow employés to join them in their effort to secure what the strikers apparently considered the laborers' just demands. In Iron Molders' Union 125 Milwaukee v. Allis-Chalmers Co., 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A. (N. S.) 315, the rule is so well stated that we quote from it the following:

"The right to persuade new men to quit or decline employment is of little worth unless the strikers may ascertain who are the men that their late employer has persuaded or is attempting to persuade to accept employment. Under the name of persuasion, duress may be used; but it is duress, not persuasion, that should be restrained and punished. In the guise of picketing, strikers may obstruct and annoy the new men, and by insult and menacing attitude intimidate them as effectually as by physical assault. But from the evidence it can always be determined whether the efforts of the pickets are limited to getting into communication with the new men for the purpose of presenting arguments and appeals to their free judgments. *Prohibitions of persuasion and picketing, as such, should not be included in the decree.*"

Labatt, in his work on Master and Servant (volume 7, p. 8364), says:

"Attendance in the vicinity of the employer's place of business for the purpose of obtaining information as to those at work there, or of communicating the information that a strike is in progress, to those who may resort for employment, is uniformly regarded as lawful even where the right to maintain pickets for the purpose of persuasion is denied."

The same writer further says:

"The preponderance of opinion is to the effect that attendance, even in numbers, for the purpose of lawfully persuading others not to work, is permissible, so long as it is not carried on in such a manner as to intimidate persons at work, or seeking employment, or to subject them to undue annoyance, or to interfere with the free access to the employer's premises."

Further authorities in support of the rule laid down in the Iron Molders' Union v. Allis-Chalmers Co. Case, supra, are Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 Am. St. Rep. 477, 1 Ann. Cas. 172; Karges Furniture Co. v. A. W. Local Union, 165 Ind. 421, 75 N. E. 877, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829; Everett v. Typo. Union, 105 Va. 188, 53 S. E. 273, 5 L. R. A. (N. S.) 792, 8 Ann. Cas. 798; In re Heffron, 179 Mo. App. 639, 162 S. W. 652; Jones v. Maher, 62 Misc. Rep. 388, 116 N. Y. Supp. 180; Jones v. Van Winkle Gin & Mach. Works, 131 Ga. 336, 62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. Rep. 235; Pope Motor Car Co. v. Keegan (C. C.) 150 Fed. 148.

But it is contended that the decree in these respects was proper because:

(a) The restraining order does not prohibit picketing per se, but restrains defendants from carrying out an unlawful conspiracy to destroy plaintiff's business; that in order to prevent the defendants from accomplishing the unlawful object of the conspiracy, it was necessary for the court to restrain the defendants from picketing the plaintiff's works, and prohibit them from arguing their cause with plaintiff's employés.

(b) Defendants were not plaintiff's employés, but were mere outsiders, intermeddlers, who were not truly representing the employés, but were trouble makers, fomenting ,strife and trouble where labor conditions and wages were entirely satisfactory to the employés.

[3] Plaintiff's contention that a court may restrain lawful acts of striking employés, when committed to carry out the purpose of an unlawful conspiracy to destroy the employer's business, is supported by many authorities. Among them are Sailors' Union v. Hammond Lumber Co., 156 Fed. 450, 85 C. C. A. 16; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Barnes v. Typo. Union, 232 Ill. 424, 83 N. E. 940; Karges v. Woodworkers' Union,, supra. If the record disclosed the existence of an unlawful conspiracy on the part of the defendants to injure or destroy plaintiff's property the court would be clearly justified in restraining lawful as well as unlawful acts committed in furtherance of such a conspiracy. If the purpose of the undertaking complained of were purely and simply, or even primarily, interference with the plaintiff in the conduct of its business as alleged, no act, however innocent in itself, directed to that end can be said to have a lawful purpose for its doing. Indeed, it may well be said that any act directed to that end is not a lawful act. If, on the other hand, the object of the undertaking is lawful, then the acts calculated to effectuate the object do not necessarily become unlawful merely because they interfere with the plaintiff's conduct of its business.

[4] The right to strike to secure higher wages and improved conditions of labor is too firmly established to necessitate further elucidation. From the record here we can reach no other conclusion than that the object of this strike was to secure for plaintiff's employés the November wage scale of the union. Nothing appears in the record to indicate that this was not in good faith, or to raise the suspicion that the strike was a mere cloak to cover a deliberate purpose to interfere with the plaintiff's conduct of its business, or to injure and destroy its business and property. The purpose being lawful, if unlawful means are used to effectuate it, such means cannot be made to reach back and taint the purpose itself with unlawfulness, and thus render unlawful all the acts in its furtherance. In the pursuit of a lawful purpose to secure a raise in wages, picketing may be employed, as this court has held, to ascertain whom the late employer "has persuaded or attempted to persuade to accept employment," and persuasion may be used to induce them to refuse or quit the employment. As stated further in the Allis-Chalmers Case:

"The right of the one to persuade (but not coerce) the unemployed to accept certain terms is limited and conditioned by the right of the other to dissuade (but not restrain) them from accepting. * * * Molders, having struck, in order to make their strike effective may persuade (but not coerce) other molders not to work for less wages or under worse conditions than those for which they struck, and not to work for their late employer at all, so that he may be forced to take them back into his foundry at their own terms.'"

Undoubtedly picketing and persuasion would interfere with plaintiff's conduct of its business, in that it would make it more difficult for it to retain old employés and to hire and keep new ones. Indeed, the very act of striking often seriously interferes with that "free and unrestrained control and operation of the employer's business" which the plaintiff here alleges as an object of the conspiracy charged; but the lawfulness or unlawfulness of the strike is not to be tested by such incidental effect of it. And so it is with persuasion and picketing, properly carried on in the interest of a lawful strike. The laborer may be strictly within his rights, although he obstructs "the free and unrestrained control and operation of the employer's business." The right to strike must carry with it by implication the right to interfere with the employer's business to a certain extent. The right to persuade prospective employés by legitimate argument must of necessity interfere with the employer's business. Where labor is essential to the successful conduct of a business, any interference with that labor is an interference with the employer's business. But whether the interference with the business is lawful or unlawful depends upon the facts in each case.

The order in the instant case fails to recognize this difference between the lawful means of interfering with another's business as an incident to the party's own right and unlawful means adopted by the same party. Methods may be considered lawful, even though the employer's business is interfered with, because such methods are incidental to the right of the employé, which right should be and is recognized as equal to the right of the employer.

[5] Plaintiff's further contention that the defendants were not its employés at the time of the strike, and therefore had no right to picket or persuade by argument those about to enter plaintiff's employment, is not well taken. It is true a striker is not technically an employé. The relation of employer and employé is temporarily suspended during a strike. The situation has been described as:

"A relationship between employer and employé that is neither that of a general employer and employé, nor that of employer and employé seeking work from them as strangers."

Neither strike nor lockout fully terminates during the strike the relationship between the parties. Among the defendants in this case there were some former employés. Many of the plaintiff's employés at the time of the strike were members of the defendants' organization, the Tri-City Central Trades Council. These facts disprove the charge that the defendants were merely intermeddling in the affairs of a company in which they had no interest. Under these circumstances, it cannot be said that the labor organization was an inter-

meddler or that its course was contrary to the wishes of its members or the wishes of the plaintiff's employés.

In so far as the decree restrains all picketing and all persuasion and all interference with the plaintiff's free and unrestrained control of its plant and the operation of its business, it transcends the limit of proper restraint, and should be modified, so as to eliminate therefrom any restraint of defendants from doing lawful acts as indicated herein. The order of this court for the modification of the decree in the Allis-Chalmers case will afford sufficient and proper guidance for the modification of the decree herein.

The decree of the District Court is reversed, with direction to modify same, and to enter a decree, in accordance with the views herein expressed.

---

⊚�þFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes