UNITED CLOAK AND SUIT DESIGNERS MUTUAL AID ASSOCIATION OF AMERICA, Appellant, *v.* MORRIS SIGMAN, Individually and as President of the INTERNATIONAL LADIES GARMENT WORKERS UNION, an Unincorporated Association Having More than Seven Members, and Others, Respondents.

First Department, November 26, 1926.

**Trade unions — action by membership corporation composed of cloak and suit designers to restrain defendants from interfering with its members and with continuance of plaintiff — purpose of defendants was to compel members of plaintiff to join their unions — plaintiff has capacity to sue for relief demanded — undenied allegations show threats, intimidation and violence — injunction pendente lite granted.**

A membership corporation, composed of cloak and suit designers, has capacity to sue in a representative action for the benefit of its members, to restrain the defendants, certain trade unions and individuals, from impeding, obstructing, hampering or interfering with plaintiff's members and with the continuance of the plaintiff.

Since the purpose of the defendants, by the acts alleged, is to compel the members of the plaintiff corporation, who are designers of cloaks and suits, earning from $5,000 to $25,000 per year, to join the defendants' unions, and since it appears without denial that the defendants and their agents have threatened the plaintiff's members and have committed assaults upon them and other acts of violence, including kidnapping, and since it further appears that the police administration has not been as active or vigilant as the conditions warranted in the protection of the members of the plaintiff corporation, an injunction *pendente lite* should have been granted.

APPEAL by the plaintiff, United Cloak and Suit Designers Aid Association of America, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of August, 1926, denying its motion for an injunction *pendente lite*.

**368** UNITED CLOAK & SUIT DESIGNERS MUT. AID ASSN. *v.* SIGMAN.

First Department, November, 1926. [Vol. 218

*William Klein,* for the appellant.

*Morris Rothenberg,* for the respondents.

MARTIN, J. The plaintiff is a membership corporation composed of cloak and suit designers and organized, as its corporate name indicates, for their mutual aid. The defendant International Ladies Garment Workers Union is a national labor organization composed of workers engaged in the various branches of the women's wear industry, about 100,000 in number, who are organized in " local unions " in all parts of the United States and Canada. The International Ladies Garment Workers Union is affiliated with the American Federation of Labor. The Joint Board of Cloak, Suit, Skirt, Dress and Reefer Makers Unions of Greater New York is composed of local unions of the International Ladies Garment Workers Union whose members are engaged in the cloak, suit and dress industry in the city of New York. The defendant United Cloak and Suit Designers Union, Local No. 45, is one of the local unions of the International Ladies Garment Workers Union and is composed of cloak and suit designers working in the city of New York. Each of the defendants Morris Sigman, Joseph Fish and Adolph Schek is sued herein as an officer of one of the three organizations referred to above. The defendant Louis Hyman is sued individually.

The complaint alleges that the defendants and members of the organizations made defendants have conspired to destroy the plaintiff corporation by force, threats, intimidation and other unlawful means and that, by means of ·violence, threats .and intimidation, they seek to induce members of the plaintiff organization to violate contracts with various employers to render services as designers. The complaint further alleges that a general strike was called by the defendants against the employers of the members of the plaintiff association; that in furtherance of the strike the defendant organizations have ordered a great number of their members as well as gangsters to assault, beat, coerce and intimidate the members of the plaintiff association in connection with such strike; that the defendants and the members of the defendant unions have combined and conspired to destroy the plaintiff association and prevent the same from continuing as such by force, violence and intimidation, and that the defendants seek to force the entire membership of the plaintiff association to become members of the defendant International Cloak and Suit Designers Union, Local No. 45. The relief demanded is in part that the defendants be enjoined from impeding, obstructing, hampering or interfering with the continuance of the plaintiff organization.

At Special Term it was pointed out that, while the complaint tends to show that members of the plaintiff organization are being subjected to threats, intimidation, force and violence on the part of the defendants, there is not shown action injurious to the plaintiff corporation as such. The court also held that plaintiff, being a corporate body and not an unincorporated association, may not maintain this action in a representative capacity or obtain the injunctive relief which on the allegations in the moving papers might have been given to the individual members of the plaintiff had they sued.

The two questions involved are (1) has the plaintiff capacity to sue, and (2) do the facts call for a preliminary injunction?

The plaintiff association is composed of designers who earn from $5,000 to $25,000 a year. It is urged that it would be as practical to compel architects or artists to join a union as it would be to compel these designers to do so. This was substantially the view taken by the Commission appointed by the Governor of the State of New York to endeavor to settle the labor disputes that were prevalent in the trade. A designer becomes established because of his individual ability or style. One as expert as a manufacturer would require is not to be obtained from a local, the same as a carpenter or bricklayer whose work has no such element of originality.

On May 20, 1926, the Commission selected to investigate this subject made recommendations, and the Governor of the State made a public pronouncement with reference to this matter. He said: "The Commission has my entire confidence. They have done an able and courageous piece of work. Their recommendations have been based on a painstaking examination of conditions, supported by an analytical and impartial study of all the facts."

The union, ignoring the report of the Commission, decided to compel all the designers to join it, it being said: "Surely, the cloakmakers cannot be expected to allow designers to work in the shops at the time of the general strike. The designers' union will do all in its power to unionize the designers wherever they work."

Nearly all the members of the plaintiff association have protested against being compelled to join the designers' union. The attempt has reached a point where force is being used not only to compel the employers to hire union designers, but also to compel designers to join the union though they do not desire to do so. The affidavits show that there have been numerous cases of violence, intimidation, assaults, kidnapping and coercion and that there is

34

**370** United Cloak & Suit Designers Mut. Aid Assn. *v.* Sigman.

First Department, November, 1926. [Vol. 218]

an attempt to terrorize the members of the plaintiff association. There have been not alone assaults, kidnapping and coercion, but also written threats and, on July 29, 1926, Jacob Seinfeld, secretary of the plaintiff organization, received the following:

"This is your last chance and you and all your scab friends have two days to join us. Kanner, Littman, Rosenzweig, Prestyly, Scarola and a few other guys will not be able to join after the time is up. You will all get the works then you will not scab any more. "THE COMMITTEE."

Averments as to threats, offensive, coercive and vile statements have been set forth, which are not substantially denied.

The court at Special Term decided against plaintiff, not because the proof did not entitle it to an injunction but in the belief that it could not bring this action because it is a corporation, and suggested that the members of this association should proceed individually.

In the case of *Master Horseshoers' Protec. Assn.* v. *Quinlivan* (83 App. Div. 459), where relief was sought against acts and conduct similar to that complained of here, this court said: "The complaint alleges that the plaintiff is a membership corporation organized under the laws of the State of New York; that its membership is made up exclusively of master horseshoers, conducting the business of horseshoeing in the boroughs of Manhattan and The Bronx, in the city of New York; that its objects, among other things, are to elevate the character and skill of the craft, to protect and foster mutual interests of horseshoers in such localities, and to act in conjunction with members of the Journeymen Horseshoers and have the articles manufactured by it used by its membership, and to help and protect the interest of its individual members; that the defendant is a voluntary unincorporated association, composed of more than seven persons, and at the time stated in the complaint the defendant Quinlivan was the president thereof; that prior to the 8th of December, 1902, the defendant association, on behalf of its members, demanded of the plaintiff that an increase in wages and a shortening of the hours of labor be granted by members of the plaintiff to members of the defendant, and that, in addition thereto, an alleged stamp or trade mark of the defendant association should be recognized by the plaintiff to the extent that plaintiff should require its members to allow such stamp or trade mark to be affixed to the horseshoes put on in the shops of any of plaintiff's members; * * *.

"That the strike ordered by the defendant association is to impair, diminish or destroy the value of such stamp and the plain-

tiff's property rights therein; and on information and belief that since the commencement of such strike the defendant maliciously and with intent to injure and destroy the plaintiff and its property rights, and to impair its membership by compelling them to close their shops and seek other lines of business, has committed and is now engaged in committing, and intends to continue to commit acts of violence against the plaintiff, its members and their employees. Certain specific acts are then alleged in which the time and place are stated where plaintiff's members and persons employed by them have been assaulted and brutally beaten by members of the defendant, and property of some of the plaintiff's members was interfered with or destroyed; and that persons in the employ of the plaintiff's members have been threatened with personal violence if they continued in such employment.

" The complaint further sets out that each and all of the acts of violence and intimidations stated have been and are committed and done in furtherance of the wrong and unlawful purpose of the defendant association, acting through its members, to injure plaintiff and force it to accede to the demands of the defendant association; that the defendant threatens and intends to continue its acts of said violence and intimidation unless restrained.

" The judgment demanded, among other things, is that the defendant be enjoined from resorting to any species of personal violence upon any member of the plaintiff or workmen employed by any member of it, or resorting to any species of threats, intimidations, force or fraud against any of its members or interfering by violence with any of the property of the plaintiff or its members in violation of law."

In answering the argument advanced as to alleged lack of power in the plaintiff to bring an action in behalf of its members, the court said: " It is no answer to the plaintiff's contention that it has a right to maintain the action to say that each member of its association could maintain an action in his own behalf to recover the damages which have been inflicted upon him by the members of the defendant, or to enjoin defendant from participating in such acts of violence by advising or approving what its members are doing. The plaintiff has been duly incorporated under the laws of the State and as such has rights in the nature of property which are entitled to the protection of the court. It has a right to exist and when its destruction is sought by unlawful means, no matter in what way or by what methods, it has sufficient standing in an action brought to prevent that result to enable a court of equity to exercise the powers which it possesses. The defendant has no right, either directly or indirectly, acting in its corporate

**372** United Cloak & Suit Designers Mut. Aid Assn. *v.* Sigman.

First Department, November, 1926. [Vol. 218

capacity or through its individual members, to resort to physical force for the purpose of enforcing its alleged rights. This, as I read the complaint, is precisely what it is doing and it should be enjoined until the action has been tried, especially in view of an allegation in the complaint, which is not denied, to the effect that the defendant has no property and cannot answer in damages to the plaintiff or its members.

"For these reasons I think the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to continue the injunction during the pendency of the action granted, with ten dollars costs."

The plaintiff and similar bodies are organized to protect and enforce the rights of their members. To accomplish this object for which it is incorporated, plaintiff has capacity to bring a representative action in its own behalf or that of its membership. Where there are, as in the present case, a number of persons whose grievances arise out of the same set of facts, and where the issues involved are identical, equity in order to avoid a multiplicity of suits will permit a representative action. As was said by Chief Justice Taft in *United Mine Workers* v. *Coronado Coal Co.* (259 U. S. 344): " * * * equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued (Story Equity Pleadings, 8th ed., §§ 94, 97; *St. Germain* v. *Bakery, &c. Union*, 97 Wash. 282; *Branson* v. *Industrial Workers of the World*, 30 Nev. 270; *Barnes & Co.* v. *Chicago Typographical Union*, 232 Ill. 402)."

In 21 Corpus Juris, 284, in an article on the general rule of equity that all persons interested in the decree should be made parties, it is said: " Perhaps the most important of all the exceptions to the general rule under consideration comprises the group of cases which have given rise to what is known as the doctrine of representation. This doctrine, tersely stated, is to the effect that where it appears that a particular party, although not before the court in person, is so far represented by others who are before the court that his interests receive actual and efficient protection, his actual joinder may be dispensed with, and the decree may be held to be binding upon him. The doctrine of representation is equally applicable both to plaintiffs and defendants, and one or more persons will sometimes be permitted to sue or defend for himself or themselves and all other persons similarly interested."

The same writer further says: " The application of the doctrine of representation in another well defined and well established class of cases is based upon the mere number of persons interested in the suit. Where persons interested in obtaining the relief sought

are very numerous, one or more may sue on behalf of himself or themselves and all others of the same class who may choose to come in,    *    *    *."

In *United Mine Workers* v. *Coronado Coal Co.* (*supra*), Chief Justice TAFT (at p. 385), referring to the argument that the capacity to sue or to be sued is determined by the effect of legal personality, said: "Undoubtedly at common law, an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member. *Pickett* v. *Walsh*, 192 Mass. 572; *Karges Furniture Co.* v. *Amalgamated Woodworkers Local Union*, 165 Ind. 421; *Baskins* v. *United Mine Workers of America*, [150 Ark. 398]; 234 S. W. 464. But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary."

The decisions not only of this court, but of the United States Supreme Court, sustain the right of the plaintiff organization to sue to protect its members against intimidation and other means of destroying the association such as have been resorted to in this instance.

The evidence of violence in these cases was sufficiently notorious to warrant a statement from the Governor of the State, who said: "While I am on this subject I want to say that I have read with great indignation of the acts of violence in connection with this strike. It is bad enough to have a strike, but violence in an industrial controversy is absolutely inexcusable and merits the most severe condemnation. I am confident that the police department, the district attorney and the courts will deal promptly and sharply with all offenders against law and order."

Although complaint is made against the issuance of injunctions in these cases, it would be most unfortunate for the public as well as those who are the objects of the violence and other abuses described, if the courts should refuse immediate relief, especially in view of the fact that it appears from this record that those charged with the administration of the criminal law at times have not been as active or vigilant as the conditions would have warranted.

We are of the opinion that this order should be reversed, with ten dollars costs and disbursements, and the motion granted.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.