of the plaintiff for goods manufactured and sold by the Orguinette Company under a contract made with said Orguinette Company. The point of lack of authority in a domestic corporation to convey its entire property to a foreign corporation does not in either of these cases seem to have been directly raised or considered, and no right of non-assenting stockholders was there involved.

This brings us squarely to the point as to whether it is contrary to the policy of this state to organize corporations with a clause in their charters permitting them to sell their entire property to a foreign corporation otherwise than as provided by section 33 and practically go out of business within 10 days after commencing business under said certificate of incorporation. I am convinced that the organization of such a corporation would be opposed to its policy as disclosed by statute and decision. Corporations are organized for a term of years specified in each incorporation; the one in question here being for the term of 1,000 years. They are given certain privileges and immunities by the state entirely opposed to the theory that as to this state they can so speedily practically terminate their own existence at their own volition. As was so well said by Judge Vann in People v. Ballard et al., 134 N. Y. 294, 32 N. E. 59, 17 L. R. A. 737:

"A corporation is purely artificial, having no natural or inherent power, but only such as its charter confers. The charter of the corporation in question was the statute under which it was organized. Upon filing the certificate of incorporation, it came into existence with power to do only that which is expressly or impliedly authorized by the statute. It had no power to act except through its trustees, who were authorized to manage its stock, property and concerns, and a majority of whom were required to be citizens of this state. Laws 1848, p. 54, c. 40, as amended by Laws 1860, p. 471, c. 269. While they were authorized to conduct its affairs, they were not authorized to terminate its existence, although under special circumstances the courts could dissolve it upon their application. Code Civ. Proc. § 2419. A corporation cannot cease to exist of its own will. Its life continues until either the charter period has expired or the court has decreed a dissolution. The law made it, and the law only can put an end to it. As it cannot take its own life directly, it cannot do so indirectly, for that would be a fraud upon the law and against public policy."

I conclude that the Secretary of State is without legal authority to file the paper here offered; and the application for a peremptory writ of mandamus is therefore denied, with costs.

---

(56 Misc. Rep. 265.)

### SEARLE MFG. CO. v. TERRY et al.

(Supreme Court, Special Term, Rensselaer County. September 16, 1905.)

1. TRADE UNIONS—STRIKES.

　　A strike of a labor union against an increase of labor without an increase of compensation or to improve the condition of its members as laborers, though not so announced at the time, is justifiable.

2. SAME.

　　Where members of a labor union employed by a certain company had struck, other members of the union employed by another company were justified in aiding their fellow members by declining to do the latter's work, and quitting work on being required so to do.

**3. SAME—INJUNCTION.**

> An injunction against striking members of a labor union will not be granted so as to prevent defendants from peacefully picketing in reasonable numbers for the purpose of observation only the premises of their former employer from the highways or streets in the vicinity of the employer's place of business, and endeavoring by argument, persuasion, or appeal only to prevent other persons from becoming employés.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 174, 175.]

Action by the Searle Manufacturing Company against Mary F. Terry and others. Temporary injunction modified.

William J. Roche, for plaintiff.

Thomas S. Fagan (Edgar L. Fursman, of counsel), for defendants.

BETTS, J. This is an action brought by plaintiff, a manufacturing company of Troy, for the purpose of obtaining an injunction against the defendants, their agents, and sympathizers, during the pendency of the action and for all time, from interfering with the business of the plaintiff, and from patroling and picketing the streets near its factory, and harassing the plaintiff in and about its business, and from intimidating, assaulting, interfering with, or molesting persons entering or leaving plaintiff's premises, or such persons as may be desirous of entering or leaving the same and for similar and kindred purposes, and for damages for such alleged actions heretofore had by the defendants. The answer denies the commission of any of the acts alleged in the form and manner alleged. The plaintiff upon the complaint, a bond, and various affidavits in support of the complaint has obtained a temporary injunction herein against the defendants, and this motion is made on behalf of all the defendants for the purpose of modifying or vacating this temporary injunction pending the trial of the action. The principal defendant is Mary F. Terry, as president of Collar Starchers' Union No. 1 (so sued, but in reality president of Collar Starchers' Union No. 2) of Troy, N. Y., of which union all of the defendants, with the exception of George Waldron, are members, and Mary F. Terry is the president thereof. All of the defendants except Mary F. Terry and George Waldron are former employés of the plaintiff.

The facts appearing from the papers herein are, in substance: That on or prior to May 15th or 16th of this year all of the defendants, except Terry and Waldron, were employed by the plaintiff as collar starchers in its factory at Troy. Some time prior to that time there had been a strike or lockout in the factory of Cluett, Peabody & Co., a firm or corporation doing a similar kind of business in the city of Troy, in that part of its factory in which starchers were employed. This plaintiff, Cluett, Peabody & Co. and other collar manufacturers in Troy are members of an association known as the "Collar & Shirt Manufacturers' Association of Troy, N. Y.," and the objects for which it is alleged said association was maintained, as stated in the affidavit of the president of plaintiff (Searle), are "for the mutual advancement and protection and betterment of the common interests of the members thereof." For some purpose deemed wise by the Searle Manufacturing Company after the strike or lockout of the starchers in the factory of Cluett, Peabody & Co. the plaintiff decided to have

certain unstarched collars of said firm of Cluett, Peabody & Co. starched by plaintiff's employés, and on May 15th or 16th the said President Searle announced that purpose to his employés, and, in substance, that they would be expected to go to work upon said collars of said Cluett, Peabody & Co. on the following day, and, if none of them returned to work the following day, the president would be compelled to conclude that the said employés had struck; that one of the defendant starchers, apparently speaking for all of the defendant employés of plaintiff, in substance, declined to do the work of the firm of Cluett, Peabody & Co., while not declining in any way to do the work as formerly done for the plaintiff. The defendant employés of the plaintiff did not return to work upon the following day nor at any time since to do the work of Cluett, Peabody & Co. as requested by the plaintiff's president, or the work of plaintiff. It is claimed on this hearing by the plaintiff that this act and what occurred at the time that this statement was made and as a result thereof constituted a strike on the part of the defendant employés. It is claimed by the defendants that what occurred at the time constituted a lockout by the plaintiff of its former employés, the defendant starchers here. By whatever name it may be called, it is apparent that the trouble between this plaintiff and such of the defendants as were its former employés had its inception by the assumption on the part of the plaintiff of the labor troubles of the firm of Cluett, Peabody & Co.

The number of starchers employed by plaintiff at the time is given as about 30. The plaintiff by this announcement to its employés undertook to add to their labors by giving them a portion of the work from the factory of Cluett, Peabody & Co. It does not appear that the wages of the defendant starchers were raised or offered to be raised, nor does it appear that any greater number of employés were to be put to work to do what necessarily, so far as appears from the papers submitted, would be an increased burden to these employés. So we find the proposition of the plaintiff to be an added labor for its employés with no additional compensation, nor any additional employés to assist in doing the same. It may, I think, be fairly assumed that originally plaintiff employed only a sufficient number of starchers to properly do its own work. Cluett, Peabody & Co. was described on the argument as the largest firm of its kind in the country; hence, the labor of plaintiff's starchers must have been increased. So it is seen, if this labor disturbance is called a strike, that the strike of the starchers was, in fact, against an increase of labor without an increase of compensation, or a strike to improve their condition as laborers, although not so announced at the time. Such a strike has been held to be justifiable in this state. National Protective Ass'n v. Cumming, 170 N. Y. 315–322, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648. It is also fairly inferable from all the papers submitted here that the starching employés of Cluett, Peabody & Co. were members of this same union; hence, the defendants herein, plaintiff's employés, by declining to do the work of this firm, were seeking to aid their fellow members of the union in a peaceful way, so far as quitting work is concerned, which it has been held in this state is justifiable and permissible. National Protective Ass'n v. Cumming, supra.

Subsequent to this 15th or 16th of May, a system of picketing or patroling the street in front of and about plaintiff's factory was instituted, and in this picketing or patroling some or all of the former employés of the plaintiff took part. What occurred growing out of this picketing or patroling is very much in dispute here. The plaintiff claims that it was carried to such extremes that parties who desired to obtain employment from it were coerced and intimidated and prevented from so doing, that others of its employés who did not strike were also coerced, intimidated, assaulted, and prevented from entering and leaving its factory, and some of them disturbed on the way to and from their homes and at their homes. It is claimed by the plaintiff that this was carried to such an extent as to be a great hindrance to its business, and that substantial damage to it has resulted from such a course of action by its former employés and their aiders and sympathizers. On the part of the defendants, plaintiff's former employés, it is claimed that only peaceful picketing and patroling in front of the plaintiff's factory and the highway and street upon which it is located and in that vicinity was had, and that no person was assaulted, molested, coerced, or intimidated by them, and that nothing was done by any of them to·in any way cause any trouble or disturbance or any damage to the plaintiff or any of its other employés; that whatever disturbances, if any, there were to these employés or those seeking employment were occasioned by other people for whom these starchers were and are in no wise liable. Upon these points there is a very great conflict in the affidavits submitted as to just what occurred at different times. The defendant starchers deny in great detail anything except peaceful picketing or patroling, and that only for the purposes of observation and peaceful persuasion. Answering affidavits are submitted by plaintiff on this hearing which deny some of defendants' affidavits and elaborate somewhat the charges made in plaintiff's original affidavits, and state some alleged new developments in the progress of the differences between plaintiff and the defendants herein, and also seek to connect these defendants with other litigation between other manufacturing concerns and their former employés now being had at Troy. The affidavits submitted by both sides are very voluminous, have been carefully read and patiently considered, and no good purpose can be conserved by their farther analysis here. It is proper, however, to state that this court has not read nor considered the papers submitted by plaintiff in the two cases of Cluett, Peabody & Co. and United Shirt & Collar Company v. Mary F. Terry and others, as it seemed manifestly unfair and unjust to these defendants so to do. Taking the complaint and answer and all the affidavits in this action submitted by both the plaintiff and defendants (with the exception noted), I am of opinion that there is not sufficient before this court to justify a temporary injunction against the defendant Starchers' Union No. 2 of Troy, N. Y.

The charges as made against it consist either of statements that must from their nature have been made on information and belief, or else of statements alleged to have been made by some of the members of the defendant Starchers' Union as to action taken by that body. All of the alleged statements by members of the union are denied by

them emphatically and with a great deal of detail. All of the persons, so far as appears to this court who are in a position to actually know what action has been taken by this union, deny that it advised or ordered a strike or is continuing the same, or that any person or persons are doing this by its direction or that any overt act such as assault, intimidation, or coercion has been employed or advised by it, and it disclaims the intention to do any such act or the right to do the same. It will not do to say that no harm can come from continuing this injunction against the defendant the Starchers' Union, even if it had taken no such action and did not contemplate it. The difficulty with a position of that kind is that the granting of an injunction in a measure assumes that the union has taken such a position, has taken a position, or taken some action injurious to the plaintiff, or that it is about to do so. Either one of these decisions must of necessity injure the union, and it is an imputation that the court should not put upon it without it fairly appearing that such action is necessary. This is an extraordinary proceeding. It is invoking the strong arm of the law asking for a temporary injunction pending litigation, and such injunctions are not granted by the court lightly nor unless the reasons for such action are convincing and some necessity is shown for haste, in order to preserve the relative position of the parties pending litigation or for some other grave reason. Whatever applies to the union applies fairly to Mary F. Terry as an individual, so that the injunction may be vacated both as to the union and Mary F. Terry individually.

As to the other parties to the action, there is such a variance between the facts claimed in the affidavits of the plaintiff and those in the affidavits of the defendant that I am inclined during the pendency of this action to permit the injunction as to them to stand pending the trial, with the exception that it should be so modified that the same shall not be held to prevent the defendants, plaintiff's former employés, from peacefully picketing in reasonable numbers for the purpose of observation only the plaintiff's premises from the highways or streets in its vicinity, and endeavoring by argument, persuasion, or appeal only to prevent other persons from becoming employés of plaintiff, and from peaceably assembling at any place or places in the city of Troy. This modification is not to be so construed as to permit the use of violence, intimidation, threats, or coercion, nor the use of vile and improper names, and the modification will also provide that only a reasonable number of the defendants, their abettors, or sympathizers may at any one time take part in this picketing or patroling; it being the intention of this modification granted that such numbers shall not congregate in front of or about the premises of the plaintiff as to in itself be a menace to any timid person employed there or seeking employment there or having business there, nor is this modification to be construed by any person as authority or license for any overt act by which the property of the plaintiff or the persons of its actual and intending employés or former employés or customers shall be in any wise injured or interfered with, and to that end, as the next term of court in Rensselaer county is not held until January next, the modification will provide for permission to the plaintiff to apply upon three days' notice to its ad-

versaries to any judge or Special Term for reinstatement of this temporary injunction as it stood before this modification ordered, or for such additional or other temporary injunction as the facts then shown may show to be necessary or desirable.