(62 Misc. Rep. 388.)

### JONES v. MAHER et al.

(Supreme Court, Special Term, Westchester County. · February, 1909.)

1. MASTER AND SERVANT (§ 20*)—TERMINATION OF EMPLOYMENT.

In the absence of a contract for an unexpired specified term of service, the employer has the absolute right at any time and for any cause to discharge his employés, and the employés may at any time and for any cause, even at their own mere will, leave the employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 19; Dec. Dig. § 20.*]

2. TORTS (§ 10*)—INTERFERENCE WITH EMPLOYMENT—RIGHTS OF STRIKERS.

Servants may not only strike, but may, by picketing, attempt to peaceably persuade other workmen not to enter the master's employ, and take their vacant places.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 10; Dec. Dig. § 10.*]

3. MASTER AND SERVANT (§ 339*)—INTERFERENCE WITH RELATION.

Servants may even persuade former fellow workmen remaining in the service to leave and join them in the strike, though they may not lawfully employ violence, threats, or verbal abuse.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 339.*]

4. TRADE UNIONS (§ 8*)—INTERFERENCE WITH EMPLOYMENT—LIABILITY.

Where defendant labor lodges for a period of six months maintained a strike of their members by money contributions made at frequent intervals to support the strikers and especially their picketing of plaintiff's factory, and the constant use by the strikers and picketers of abusive epithets towards plaintiff's workmen was open and notorious during such period, the lodges were liable as having aided and abetted such unlawful conduct.

[Ed. Note.—For other cases, see Trade Unions, Dec. Dig. § 8.*]

5. INJUNCTION (§ 101*)—STRIKES—PICKETING—DAMAGES.

Where defendant labor lodges and their members picketed plaintiff's factory, the pickets by the use of abusive epithets and violence frightening plaintiff's employés, whereby plaintiff was compelled to feed and practically keep his employés in the factory to protect them, to hire and maintain guards, and to employ legal services, plaintiff was entitled in an action for an injunction and for damages to recover for the expenses thus incurred.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. § 101.*]

Action by Joseph W. Jones against George M. Maher, as President of District Lodge No. 15 of the International· Association of Machinists, and others. Judgment for plaintiff.

Henry C. Hunter (James M. Hunt, of counsel), for plaintiff.
Robert P. Bell, for defendants.

MILLS, J. This is an action to enjoin the defendants from performing certain acts to the detriment of the plaintiff's business in their conduct of a strike in which a portion of his employés have engaged. The action was tried before me at the Westchester Special Term in January, 1908, and decision was then reserved, briefs to be submitted by counsel at their convenience. The brief in behalf of the plaintiff was not received until last October, and that in behalf of the defendants was not received until about 10 days ago. Although the case is

---

of a character unusual at least in this judicial district, and its features therefore apt to impress the mind, yet, owing to the long and unexpected delay, I have found it necessary since its final submission to read the stenographer's minutes at length, and to carefully analyze the material testimony. After having thus given to the matter, as it seems to me, more than ordinary consideration, I have concluded that the plaintiff's case has been duly established, and that he is entitled to relief both by way of injunction and damages.

The weight of the evidence appears to me to fully establish the following material facts:

The plaintiff is and for some years has been engaged in the business of manufacturing speedometers; that is, instruments for measuring the speed of automobiles. They were made under his own inventions, and for some 10 years prior to 1907 he had been manufacturing and selling them in the city of New York. In 1906, with the view of changing his factory to the country, he purchased land at New Rochelle, and thereon erected a factory and installed in the same machinery, all to the cost of about $250,000. About the 1st of January, 1907, he began manufacturing in such factory. Some days prior to the 14th of March of that year he discharged or caused to be discharged from his service one Manning, who was the foreman of the toolroom in that factory. There is some conflict in the testimony as to the cause of such discharge; but, in the view of the law hereinafter taken and stated, it is unnecessary to solve that conflict. Shortly thereafter, first within a day or two, James P. Schofield, who was the business agent of District Lodge No. 15 of the International Association of Machinists, called at the plaintiff's office in New York City with a view of seeing him at least in regard to the discharge of Manning, who was also a member of such association. Machinists, or at least many of them, are organized in a voluntary association, of which the general organization is known as the International Association. Next below that come various district organizations, each for a given territory and known as "district lodges," and finally below the district lodges are local organizations known as local lodges, several coming under the jurisdiction of each district lodge. All the lodges are voluntary associations, and are entirely unincorporated. The locality of the plaintiff's factory fell within the jurisdiction or limits of Local Lodge No. 460, and that within those of District Lodge No. 15. In a general way the object of the association in its several branches is largely to promote the interests of its members, and its active work evidently is to promote such interests in the relations of its members with their employers. Many of the men employed in the plaintiff's factory were members of such Local Lodge No. 460.

During the forenoon of the 14th of March, 1907, the plaintiff's superintendent by his direction discharged five other foremen at the factory, viz., the defendants William Volkman, Robert Long, Thomas Shore, Frank Meyers, and Alexander Robinton. Between the discharge of Manning and that of the other foremen Schofield had several times called at plaintiff's office in New York City to see him; but without success, leaving for him his business card as such business

agent of said District Lodge No. 15. The forenoon of the 14th of March he called twice, and at the first call left a message for the plaintiff, to the effect that there was some trouble at his New Rochelle factory, and that he had better see him about it. About noon he called again, and plaintiff refused to see him. Thereupon he (Schofield) went to New Rochelle, arriving there at the factory about 2 p. m. Upon the discharge of the foremen, most of the people working under them left with them at noon, and, when Schofield arrived, others, including the defendant Volkman, one of the foremen discharged that day, also left the factory. The discharged foremen and the employés who had stayed out or gone out, some 70 to 90 in all, thereupon held a meeting, and with the aid and counsel of Schofield organized a strike. The object or purpose of the strike seems to have been to secure that the plaintiff reinstate the discharged men, and, of course, incidentally take back those who had voluntarily left. The strikers at once in their meeting determined to institute picketing of plaintiff's factory so as to prevent his securing others to take their places in his work. They agreed that all of the men among the strikers should act as pickets, and appointed as the leader of the pickets the defendant Volkman, and he acted in that capacity throughout the strike, up even to the following November. The effort of the strikers was to have at least eight pickets at all times posted at various commanding points in the public streets about and near the factory, so as to guard effectually all approaches thereto. The effort of the pickets was twofold—first, to persuade newcomers not to take the places of the strikers; and, second, to induce those who might still work at the factory to leave and join the strike. Efforts were also made by some of the strikers to induce the various boarding house keepers in the vicinity to refuse to board any one who might work at the factory, and such efforts for a time were attended with considerable success. Attempts were also made by some of the strikers to establish against the plaintiff a substantial boycott by preventing his employés being supplied with milk, and by posting and distributing notices and cards containing the well-understood condemnatory expression "Unfair," and the express charge that "Jones' speedometers" were then being made not alone by non-union labor, but also by unskilled and incompetent labor, and, in substance, urging the public not to purchase the plaintiff's product. Such cards were distributed by the defendant Volkman at the annual automobile exhibition in New York City as late as November, 1907. Some picketing was attempted about plaintiff's salesrooms in New York City, but that seems not to have been constant. About the factory at New Rochelle the picketing was constantly and vigorously maintained for several months, up to October at least and even to some extent into November. Approximately 100 men were by the efforts of the pickets either turned away from accepting employment, or induced to actually leave employment at the factory during the pendency of the strike.

It was substantially the daily practice of the pickets, if their persuasions were not successful, to address openly upon the public streets and near the factory to the persons whom they accosted as actual or prospective employés epithets offensive and even indeed indecent.

Frequently they jostled and crowded on and along the public walk leading to the factory the employés going to and from the factory, and at the same time applied to them such abusive terms. There were also occasionally instances of actual violence, more serious than the mere jostling or "shouldering" (to adopt a phrase from the testimony) ; but such instances of substantial violence do not appear to me to have been so frequent as to charge with responsibility therefor those who did not actually participate therein. It may be said, however, that the use of such epithets might well have been expected to lead to personal affrays, and, indeed, in at least several instances such was the cause of the actual substantial violence proven. It does' not appear that any resolution of any meeting of the strikers or of either of the lodges ever authorized the use of any epithets or violence by the pickets, or in any way took express cognizance of any such occurrence. The meetings of the lodge, however, were frequently advised of the pendency of the strike and made regular contributions in money to the support of the strikers and the picketing at stated intervals. For some time after the commencement of the strike, the plaintiff felt compelled by the manner in which the picketing was conducted as above stated to feed and practically keep his employés in the factory itself, also, for a longer period, to hire and maintain guards, and also to employ legal services, all of which he did to his very considerable cost. In' May, 1907, he brought this action for injunctive relief and to recover damages as incidental thereto.

The law of this case is well settled, as both counsel seem to agree. It may, therefore, be briefly stated without attempting to verify the statement by citation of authorities. The "law of strikes" is well established, at least to the following extent: In the absence of a contract for an unexpired specified term of service and hire, there being here no question of any such, the employer has the absolute right at any time and for any cause to discharge his employés, one or more, and, on the other hand, his employés have the right at any time, singly or collectively, and for any cause, even at their own mere will, to leave his employment, and, if such employés think they have any grievance against him, their employer—e. g., for the discharge of a fellow employé—they may not only strike—that is, themselves leave his employment—but may by picketing, attempt to peaceably persuade other workmen not to enter his employment and take their vacant places, and even to persuade their former fellow workmen still remaining in the service, to leave and join them in the strike. Their efforts to attain such result, however, must be confined to acts of peaceable persuasion. Certainly they may not extend to violence, threats, or even verbal abuse; and, if they do so extend, they thereby become unlawful. The evidence in this case amply demonstrates that the picketing of the plaintiff's factory at New Rochelle for the period of at least six months after March 14th, when the strike began, was constantly, that is, practically daily and openly, of such unlawful character, by reason at least of the use of abusive epithets, as is plain from the above recital of facts. There can be no doubt, therefore, that the plaintiff's cause of action has been established against those of the defendants

who have been proven to have personally participated in such overt and unlawful action.

The following named defendants have been clearly proven to have so participated, viz.: Thomas Shore, William Volkman, Frank Meyers, Charles Meyers, James Kelly, Frank E. Becker, Robert Long, Howard Grosvenor, George Long, and George Harrison. The grave question for determination is the question whether or not the two lodges, District No. 15 and Local No. 460, each of which is a voluntary association, not incorporated, consisting of more than seven persons and here sued under section 1919 of the Code of Civil Procedure by its president as a defendant herein, should be held responsible for such unlawful conduct of the picketing. It is not clear that either lodge can be held responsible for the initiation of the strike, and it is immaterial whether it can be so held, because the strike itself was not unlawful. Both lodges, however, maintained the strike by money contributions made at frequent and stated intervals to support the strikers and especially the picketing. It does not appear that the above recited unlawful conduct of the picketing was ever expressly brought to the notice of a meeting of either lodge; but the same must have been well known to their representatives. The business agent of District Lodge No. 15 frequently visited the scene of the strike, attended local meetings of the strikers, and, if he had kept his eyes and ears open, must have become well informed as to the unlawful character of the picketing, viz., the constant and public use of abusive epithets by the pickets as above described. Those things were done so openly and regularly that any one interested in the conduct of the strike could, by the least observation or inquiry, have ascertained them at any time for months. I think, therefore, that those lodges in thus regularly sustaining the picketing by pecuniary support for so long a time must be held to have so acted with knowledge, actual or constructive, of the unlawful conduct of the picketing, and therefore that they must be held to have aided and abetted such unlawful conduct. Hence I conclude that the plaintiff's case is established against the two lodges, District No. 15 and Local No. 460, as well as against the defendants above named as having been proven to have personally participated in the verbal abuse.

The acts of actual, substantial violence proven appear to me not to have been sufficiently frequent or notorious as to charge the lodges or the strikers, other than those who actually participated in them, with having aided and abetted them. Inasmuch as the evidence as to the constant use of abusive epithets is so ample and is in itself sufficient to establish the unlawful character of the picketing, I do not deem it necessary to inquire and determine to what extent the efforts at boycotting are to be regarded as illegal. In any event, the evidence as to them does not seem to be sufficient to establish that either lodge aided and abetted them.

It remains to determine what the plaintiff shall be permitted to recover as incidental damages against the two lodges and the above-named defendants who actually participated in the unlawful conduct of the picketing. I think that such damages should include what the

plaintiff paid for counsel fees, viz., $347, and also what he paid for guards about his factory and for maintaining there in the early part of the strike a commissariat for feeding and caring for his employés, to protect them from the unlawful efforts of the pickets, which I find amounted to at least the sum of $3,500, making an allowance of damages in the total sum of $3,847. I do not think that the evidence as to canceled orders or lessened output of the factory is sufficiently definite to warrant an allowance of damages upon either such account.

My conclusion on the whole case, therefore, is that the plaintiff is entitled to judgment for relief by way of injunction, and incidentally for damages in the amount last named against both of said lodges or their representative officers, defendants herein, and also against the individual defendants above stated to have actually participated in the unlawful conduct of the picketing. The form of the decision should be settled upon notice.